NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Progeny Advanced Genetics, Inc., | NO. CV 05-03091 JW |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| Paragon Seed, Inc., | |
| Defendant. | |

**I. INTRODUCTION**

Plaintiff, Progeny Advanced Genetics, Inc. ("Plaintiff"), initiated this action against Defendant, Paragon Seed, Inc. ("Defendant"), alleging the following causes of action: (1) Infringement under the Plant Variety Protection Act ("PVPA"); (2) False Designation of Origin and False Representation; (3) Unfair Competition; and (4) a petition for Declaratory Judgment with regard to the arbitration issues. Presently before the Court is Defendant's Motion to Dismiss the Complaint and all causes of action stated therein on the basis that Plaintiff's complaint fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. at 1: 27.) This Motion was heard before the Court on February 27, 2006. For the reasons set forth below, the Court GRANTS Defendant's Motion to Dismiss.

## II.  BACKGROUND

In September of 2003, Plaintiff filed suit against Defendant alleging, <u>inter</u> <u>alia</u>, that a variety of lettuce seed sold by Defendant – the "King Louie/TG" romaine lettuce variety – infringed on a Plant Variety Protection Act ("PVPA") certificate issued to Plaintiff for a similar romaine lettuce variety known as "King Henry."  On May 11, 2004, after participating in an Early Neutral Evaluation ("ENE") session, the parties entered into a Settlement Agreement disposing of all claims and counterclaims regarding Defendant's alleged infringement.  (Defendant's Motion to Dismiss, hereinafter "Mot.," Docket Item No. 7, 7-8.)  Specifically, in the parties' attempt to dispose of all pending claims, counterclaims, and future claims, the Settlement Agreement contained several provisions regarding Defendant's development and sale of its TG ("Tall Guzmaine") variety in relation to the King Henry dispute.  The pertinent terms of the Settlement Agreement are as follows:

4. **Future Development and Sales by Paragon**:

   a. Progeny agrees that Paragon has the right to produce for commercial sale and sell the public Tall Guzmaine variety under the name Tall Guzmaine.

   b. Progeny agrees that Paragon has the right to use the Tall Guzmaine variety in its breeding program and to develop **new and distinct varieties** from King Henry using selections from Tall Guzmaine.

   c. Progeny agrees that Paragon has the right to produce for commercial sale and sell **newly developed different varieties** derived from Tall Guzmaine which are marketed under a new name, provided that Paragon has first applied for a Plant Variety Protection Certificate to the PVP Office prior to selling any such newly developed varieties, and provided that Paragon does not use the name "King" coupled with any other word or words as the variety name for any Florida type romaine lettuce variety. Progeny recognizes and agrees that Paragon is currently marketing a spring mix lettuce variety named "King Kong" and a dark romaine lettuce variety named "Kingpin," and that those variety names do not infringe upon any rights of Progeny.

   d. Progeny agrees that **during the time period that any application is pending for** a Plant Variety Protection Certificate to the PVP Office by Paragon for **a different variety derived from Tall Guzmaine, Progeny will not make any claims that such variety infringes any**

2

> **of its rights by challenge of the variety by litigation in court** or file any Protest Petition with the PVP office. Notwithstanding the foregoing, in the event that Progeny has a good faith belief that its rights are **infringed by such variety derived from Tall Guzmaine**, then Progeny shall have the right to request that Paragon and Progeny **mediate the dispute**....**In the event that the parties are unable to mediate** their dispute, then they agree to **submit their disputes to binding arbitration** before the Judge selected for the mediation.

(Request for Judicial Notice, Exhibit "C," Docket Item No. 9, 2-3.) (emphasis added.)

Following execution of the Settlement Agreement, Plaintiff filed the instant action. Plaintiff contends that Defendant's Rubicon lettuce variety, which is the subject of a pending PVPA Certificate and derived from Tall Guzmaine, infringes on Plaintiff's King Henry lettuce variety. Plaintiff further contends that any dispute concerning whether or not the Rubicon variety infringes on Plaintiff's rights under the PVPA is not subject to adjudication through private mediation and arbitration as outlined in the Settlement Agreement. (Mot. at 8:24-28.) Defendant moves to dismiss, contending that, under the terms of the Settlement Agreement, Plaintiff is precluded from filing any claims in court challenging a lettuce variety derived from Tall Guzmaine during the time an application is pending for a PVPA Certificate by Defendants. (Mot. at 9:11-13.) Based on the arguments advanced by counsel at the hearing and in their briefs, the Court GRANTS Defendant's Motion to Dismiss.

### III. STANDARDS

**Motion to Dismiss under Rule 12(b)(6)**

The strict standard for granting a motion to dismiss under Rule 12(b)(6) is set forth in Conley v. Gibson, 355 U.S. 41 (1957). A motion to dismiss under Rule 12(b)(6) must not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46. As the Ninth Circuit observed, a "motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." Gilligan v. Jamco Develop. Corp., 108 F.3d 246, 249 (9th Cir. 1997).

In ruling on a motion to dismiss, the Court must accept as true all material allegations in the

3

1  complaint, as well as reasonable inferences to be drawn from them. <u>Leatherman v. Tarrant County
2  Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 164 (1993); <u>Pareto v. FDIC</u>, 139 F.3d
3  696, 699 (9th Cir. 1998).  However, the court need not accept as true conclusory allegations or legal
4  characterizations. <u>Pareto</u>, 139 F.3d at 699.  Also, the court need not accept unreasonable inferences
5  or unwarranted deductions of fact. <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir.
6  2001).

## IV.  DISCUSSION

8  The primary issue at hand is the question of whether the Settlement Agreement, by its terms,
9  prohibits legal proceedings in favor of the mandatory arbitration/mediation scheme set forth in the
10 Settlement Agreement.  Courts have inherent power to enforce settlement agreements between
11 parties in pending cases. <u>Metronet Services Corp. v. U.S. West Communications</u>, 329 F.3d 1013-
12 1014 (9th Cir. 2003).  In this instance both parties acknowledge the existence of a Settlement
13 Agreement, but dispute the applicability of its terms here.  The posture of this motion is appropriate
14 to test whether Plaintiff's complaint is barred by the parties' settlement agreement. Motions pursuant
15 to Federal Rule 12(b)(6) have been used in similar instances to determine applicability of arbitration
16 agreements.  <u>See</u> <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79, 84 (2002).

17 **A.     Request for Judicial Notice**

18 As a threshold matter, Defendant requested judicial notice of six documents with its motion
19 to dismiss:  (1) the complaint in the prior action; (2) Defendant's counterclaim in the prior action;
20 (3) the Settlement Agreement entered into on May 11, 2004 by the parties as a result of the prior
21 action and which had been previously entered into the Court's records; (4) the complaint in the
22 current action; (5) the PVPA application filed with the PVP Office on December 22, 2003 for which
23 Defendant seeks a Certificate pursuant to the PVPA; and (6) the record of the pending application
24 for "Rubicon" from the PVP Office website.  Plaintiffs do not dispute that judicial notice is
25 appropriate with regard to these documents, other than Plaintiff's statement that the use of judicial
26 notice for the PVPA application may not be proper since the application is not publicly available.
27 The Court need not address that issue at this time because the content of the PVPA application itself

4

1 is irrelevant to the interpretation of the Settlement Agreement. Accordingly, Defendant's request for
2 judicial notice of all six documents is granted, except as to the PVPA application.

**B.      Express Language of the Settlement Agreement**

Plaintiff contends that the intent and meaning of the Settlement Agreement should be construed to limit its application to instances involving "newly developed" lettuce varieties derived from Tall Guzmaine. Plaintiff further contends that only lettuce varieties developed <u>after</u> the Settlement Agreement should be limited by its terms, with respect to the requirement of arbitration and mediation. Defendant contends that the Settlement Agreement applies to any infringement claims involving King Henry lettuce, for which PVP applications are pending, and that express exclusion of varieties developed prior to the Agreement would be necessary to render the Agreement inapplicable to Rubicon.

The parties agree that the "Rubicon" variety was developed before the Settlement Agreement was reached, although its existence was not known publicly and no attempts to market it had yet been made. The crux of Plaintiff's argument is that the phrase "newly developed," which appears in a portion of the Settlement Agreement, should be construed as a limiting term that removes Rubicon from the scope of its application.

The Court must examine and interpret the terms of the parties' contract to determine whether a particular dispute is subject to the parties' arbitration agreement. <u>Mediterranean Enterprises, Inc. v. Ssangyong Corp.</u>, 708 F.2d 1458, 1463 (9th Cir. 1983).

The terms of the Agreement are very specific with respect to its application here, in that all disputes between the parties will be subject to arbitration, provided that the subject in question involves a "different variety derived from Tall Guzmaine...while an application is pending for a Plant Variety Protection certificate to the PVP office." (Request for Judicial Notice, Exhibit "C," Docket Item No. 9, ¶ 4.)

Portions of the agreement do make reference to Defendant's right to pursue "newly developed" varieties on the part of Defendant. However, what constitutes a "newly developed" variety is not defined in the Settlement Agreement. The phrase arguably could refer to varieties

5

under development, but not yet made public. The terms of art referred to by Plaintiff ("newly developed" and "new and distinct") are, at best, indications of the intent of the parties. However, reference to those passages is not necessary to construe the clear terms of the agreement, especially with respect to the arbitration clause. Paragraphs (b) and (c) use the phrases "new and distinct" and "newly developed" in reciting the rights of Defendant. These words are tellingly absent from the language of paragraph (d) regarding arbitration, thus indicating the parties' intent to apply the arbitration provision broadly.

Plaintiff assumes that the above language applies a temporal context with reference to the date the Settlement Agreement was executed. This simply is not the case. The phrase "newly developed" is not a critical nor limiting element with respect to the Court's interpretation of the Settlement Agreement.

Contracts must be interpreted so as to give effect to the "mutual intention of the parties as it existed at the time of the contracting." Victoria. v. Superior Court (Kaiser Foundation Hospital), 40 Cal.3d 734 (1985). In this case, the paramount intention of the parties is clearly stated within the Settlement Agreement. Both Plaintiff and Defendant recognized a likelihood of further disputes involving additional lettuce varieties developed by Defendant that originated from Tall Guzmaine. The current controversy represents precisely what was foreseen within the Settlement Agreement. Whether or not Rubicon was developed on a particular date does not affect the application of binding arbitration or mediation to this dispute. Indeed, all of the conditions stated within the Settlement Agreement apply.

At the time the parties penned their compromise, Plaintiff and Defendant intended to resolve what had become a lengthy and contentious dispute while also seeking to avert similar claims with arbitration and mediation. The Court finds that the terms of the Settlement Agreement expressly apply to the very claim at issue here, proscribing a judicial remedy for the alleged infringement. Plaintiff's dissatisfaction with the wording of the Settlement Agreement is unavailing in this forum.

**C.     Policy of Interpretation Favoring Arbitration**

Plaintiff and Defendant each contend that the other party's interpretation of the Settlement

6

1 Agreement's scope is inconsistent with the policy of interpreting agreements in favor of arbitration.
2 The courts have made clear their policy of interpreting agreements in favor of arbitration.  In 1983,
3 the Supreme Court stated, "the [Federal] Arbitration Act establishes that, as a matter of federal law,
4 any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."
5 Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74
6 L.Ed.2d 763 (1983); Victoria, 40 Cal.3d 734 (1985).  Additionally, the Supreme Court recognized
7 that "ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of
8 arbitration."  Mastrobono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995), citing Volt
9 Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 476
10 (1989).  Furthermore, the California Supreme Court recognized that broad contractual provisions for
11 arbitration are to be "liberally construed," and that "[d]oubts as to whether an arbitration clause
12 applies to a particular dispute are to be resolved in favor of sending the parties to arbitration. The
13 court should order [the parties] to arbitrate unless it is clear that the arbitration clause cannot be
14 interpreted to cover the dispute."  Poster v. Grunwald-Marx, Inc., 56 Cal.2d 169, 183 (1961); United
15 Transportation Union v. Southern Cal. Rapid Transit Dist., 7 Cal. App. 4th 804, 808 (1992).

16 　　　　Federal and California state law limit the reach of this policy to the intended scope of the
17 arbitration clause, providing that Congress did not enact the Federal Arbitration Act ("FAA") to
18 "operate without regard to the wishes of the contracting parties."  Mastrobuomo v. Shearson
19 Lehman Hutton, 514 U.S. 52, 57, 115 S.Ct. 927, 74 L.Ed.2d 763 (1983).  However, the party
20 opposing arbitration has the burden of showing that the agreement to arbitrate cannot be interpreted
21 to apply to the dispute in question.  Buckhorn v. St. Jude Heritage Medical Group, 121 Cal. App. 4th
22 1401, 1406 (2004), citing Coast Plaza Doctors Hosp. v. Blue Cross of California, 83 Cal. App. 4th
23 677, 686-687 (2000).  As discussed above, the express language of the arbitration provision here
24 demonstrates an intent that all disputes between the parties will be subject to arbitration, provided
25 that the subject of contention involves a variety derived from Tall Guzmaine.  Accordingly, the
26 Court finds that Plaintiff has not met its burden of showing that the express terms of the Settlement
27 Agreement cannot be interpreted to apply to this dispute.
28

7

**D.    Attorneys Fees and Costs**

Defendants are entitled to attorneys fees and costs pursuant to California Civil Code §1717(a), which states: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party on the contract...shall be entitled to reasonable attorney's fees in addition to other costs." The Settlement Agreement in this matter specifically provides for payment of reasonable attorneys' fees and costs to the prevailing party in an action to enforce the agreement. Defendant's motion to dismiss is, in essence, an action to enforce the Settlement Agreement. As the prevailing party in the motion to dismiss, Defendant is entitled to its reasonable attorneys' fees and costs.

## V.   CONCLUSION

The Court finds that the terms of the Settlement Agreement expressly apply to the controversy pending between the parties in the instant action, and that this forum is not available to Plaintiff for its claim that the Rubicon variety infringes upon the PVP certificate at issue. Accordingly, the Court GRANTS Defendant's Motion to Dismiss, with prejudice. Further, Defendant is entitled to reasonable attorneys fees and costs, and shall file and serve with the Court an itemization of fees and costs, supported by declaration, no later than March 13, 2006.

Dated: March 1, 2006                                                /s/James Ware

05cv3091dismiss                                                     JAMES WARE
                                                                    United States District Judge

8

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Effie F. Anastassiou effieesq@juno.com
Rachel Krevans rkrevans@mofo.com

**Dated: March 2, 2006**                                   **Richard W. Wieking, Clerk**

                                                           **By:_/s/JW Chambers_____
                                                                Melissa Peralta
                                                                Courtroom Deputy**

**United States District Court**
For the Northern District of California

9